IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
JASPER DIVISION

| | | |
|---|---|---|
| **KRISTAL KIRKLAND,** | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) | No. 6:23-cv-00050-LSC |
| **I.C. SYSTEM, INC.,** | ) ) ) | |
| Defendant. | ) ) | |

**MEMORANDUM OF OPINION**

Plaintiff Kristal Kirkland ("Kirkland") brings this action against Defendant I.C. System, Inc. ("ICS"), a debt collection company, alleging violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* ("FDCPA"). Specifically, Kirkland alleges ICS violated § 1692e and § 1692f of the FDCPA by failing to report to credit-reporting agencies that she disputed a debt ICS was attempting to collect. (Doc. 1 ¶¶ 23, 27.) Before the Court are ICS's and Kirkland's cross motions for summary judgment (docs. 33, 34), as well as Kirkland's motion to strike portions of a declaration. (Doc. 39.)[1] For the reasons stated below, ICS's motion for summary

---

[1] Regarding motions to strike summary judgment evidence, the Court "is capable of sifting evidence, as required by the summary-judgment standard, without resort to the exclusionary process." *Gartman v. Cheatham*, No. 2:18-cv-534-MHT, 2022 WL 718609, at *1 (M.D. Ala. Mar. 9, 2022). As such, the Court will "construe the motions to strike as notices of objections to the declaration and will implicitly or explicitly resolve these objections" when reviewing the parties' motions. *Norman v. S. Guar. Ins. Co.*, 191 F. Supp. 2d 1321, 1328 (M.D. Ala. 2002).

judgment is due to be **GRANTED IN PART** and **DENIED IN PART**. Kirkland's motion for summary judgment is due to be **DENIED,** and her motion to strike is due to be **TERMINATED AS MOOT**.

I. BACKGROUND[2]

From 2020 to 2022, Kirkland incurred consumer debts owed to AT&T and KinderCare that she was unable to pay due to financial difficulties. (Docs. 1 ¶ 7; 40 ¶¶ 1, 13, 17.) Around this time, AT&T and KinderCare sold the debts to ICS for collection. (*Id.*) ICS eventually attempted to collect these debts via negative credit reporting.[3] To identify the debtor of its account, AT&T provided ICS with the name "Kristal Kirkland," an address in Vestavia Hills, Alabama, and Kirkland's social security number. (*Id.* ¶ 14.) KinderCare likewise provided ICS with the name "Kristal Kirkland" and an address in Vestavia Hills, Alabama, but provided no social

---

[2] The facts set out in this Opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record. These are the "facts" for summary judgment purposes only. They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994). The Court is not required to identify unreferenced evidence supporting a party's position. As such, review is limited to exhibits and specific portions of the exhibits specifically cited by the parties. *See Chavez v. Sec'y, Fla. Dep't of Corr.*, 647 F.3d 1057, 1061 (11th Cir. 2011) ("[D]istrict court judges are not required to ferret out delectable facts buried in a massive record….").

[3] The parties use the term "credit reporting" to refer to a collection practice whereby debt collectors report unpaid consumer debts to national credit reporting agencies—Experian and Trans Union—thereby impacting the debtholder's credit score and ultimately impairing the debtholder's ability to obtain credit.

security number.[4] (*Id.* ¶¶ 18, 19.)

In the summer of 2022, Kirkland hired the law firm Bond & Botes to help with her debt issues. (Doc. 34 ¶ 11.) In November of 2022, Bond & Botes sent, and ICS received, two identical letters ("Dispute Letters") on behalf of Kirkland. (Docs. 1-2; 41 ¶ 14.) The Dispute Letters stated they were to serve as written notice that Bond & Botes represented Kirkland "for all debts that he or she may have." (Doc. 1-2.) They also stated, "the above referenced individual(s) disputes the *debt* which you are attempting to collect." (*Id.* (emphasis added).) Both Dispute Letters listed the debtor's name as "Kristal Kirkland (a/k/a Kirkland Kristal, Kirk Kristal Kirkland)," provided her social security number, and listed her address as a PO Box in Guin, Alabama. (*Id.*) The letters did not identify any specific account or debt being disputed. (*Id.*)

ICS has procedures in place for handling generic dispute letters like those sent by Bond & Botes. (Doc. 33-1 ¶ 49.) Those procedures require ICS Correspondence Representatives to verify that the information contained in a dispute letter matches the information ICS has in its system by matching a debtor's first and last name plus either: (1) date of birth; (2) social security number; or (3) address. (Doc. 34-3 at

---

[4]   KinderCare had previously referred Kirkland's debt to ICS in 2020 but later recalled it. (Doc. 33-1 ¶¶ 8, 19.) In 2022, KinderCare referred the same debt to ICS and provided the same information, which is the collection at issue. (*Id.* ¶ 21.)

22:10–16.) If ICS is unable to locate a matching account based on the information provided in a dispute letter, it sends a "Can't Find" letter requesting more information to identify the relevant disputed account. (Docs. 33-1 ¶ 51; 40 ¶ 33.)

After receiving the Dispute Letters, ICS queried its database and identified the AT&T account by matching Kirkland's name and social security number to the information in the Dispute Letters.[5] (Doc. 34-3 at 11:3–7.) After investigating the disputed AT&T account, ICS was unable to verify the accuracy of the debt and requested deletion of the account with the credit reporting agencies. (Doc. 33-1 ¶ 43.) However, because the KinderCare account had no associated social security number and contained a different address than the one in the Dispute Letters, ICS did not identify the KinderCare account as belonging to Kirkland and therefore did not mark it as disputed. (*Id.* ¶ 45.) ICS sent a letter to Bond & Botes in November 2022 indicating that it had deleted the AT&T account but making no mention of the KinderCare account. (Doc. 33-3 at 9.) In January 2023, Kirkland obtained copies of her credit reports showing the KinderCare debt as having been reported again by ICS but not marked as disputed. (Doc. 1-3 at 4.) She then filed this lawsuit.

---

[5] The two Dispute Letters were handled by two different ICS employees. The employee who handled the first letter was deceased by the time of this action and was unable to provide testimony as to how the first Dispute Letter was investigated. (Doc. 34-3 at 9:21–10:9.) As such, this Opinion discusses only ICS's investigation and handling of the second letter.

## II. STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is genuine if "the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Hickson Corp. v. N. Crossarm Co., Inc.*, 357 F.3d 1256, 1260 (11th Cir. 2004). A genuine dispute as to a material fact exists "if the nonmoving party has produced evidence such that a reasonable factfinder could return a verdict in its favor." *Greenberg v. BellSouth Telecomms., Inc.*, 498 F.3d 1258, 1263 (11th Cir. 2007) (quoting *Waddell v. Valley Forge Dental Assocs.*, 276 F.3d 1275, 1279 (11th Cir. 2001)). The trial judge should not weigh the evidence, but should determine whether there are any genuine issues of fact that should be resolved at trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986).

In considering a motion for summary judgment, trial courts must give deference to the non-moving party by "view[ing] the materials presented and all factual inferences in the light most favorable to the nonmoving party." *Animal Legal Def. Fund v. U.S. Dep't of Agric.*, 789 F.3d 1206, 1213–14 (11th Cir. 2015) (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970)). However, "unsubstantiated assertions alone are not enough to withstand a motion for summary judgment."

*Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir. 1987). Conclusory allegations and "mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Melton v. Abston*, 841 F.3d 1207, 1219 (11th Cir. 2016) (*per curiam*) (quoting *Young v. City of Palm Bay, Fla.*, 358 F.3d 859, 860 (11th Cir. 2004)). In making a motion for summary judgment, "the moving party has the burden of either negating an essential element of the nonmoving party's case or showing that there is no evidence to prove a fact necessary to the nonmoving party's case." *McGee v. Sentinel Offender Servs., LLC*, 719 F.3d 1236, 1242 (11th Cir. 2013). Although the trial courts must use caution when granting motions for summary judgment, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

### III.  DISCUSSION

Kirkland claims ICS violated § 1692e and § 1692f of the FDCPA by reporting the KinderCare debt to the credit reporting agencies without also reporting that the debt was disputed. (Doc. 1 ¶¶ 23, 27.)

ICS moves for summary judgment on both claims. (Doc. 33.) ICS contends it is entitled to summary judgment on Kirkland's § 1692f claim because it is defectively duplicative of her § 1692e claim. (*Id.* at 11.) ICS further contends that both claims

fail because (1) there is no evidence that ICS knew or should have known the KinderCare debt was disputed; (2) ICS was not required to update its credit reporting to indicate that Kirkland disputed the KinderCare account; and (3) ICS is entitled to the bona fide error defense. (*Id.* at 13, 15, 18.) This Court agrees with ICS that Kirkland's § 1692f claim is defectively duplicative of her § 1692e claim. However, genuine disputes of material fact preclude the entry of summary judgment for either party as to Kirkland's § 1692e claim.

### A. Kirkland's § 1692f claim is duplicative of her § 1692e claim.

Section 1692f generally prohibits using "unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. The Eleventh Circuit has characterized this as a "catch-all prohibition on unfair and unconscionable conduct." *Miljkovic v. Shafritz & Dinkin, P.A.*, 791 F.3d 1291, 1308 (11th Cir. 2015). To proceed under a § 1692f claim, however, a plaintiff must prove "conduct beyond that which [s]he asserts violates other provisions of the FDCPA." *See id.* (dismissing § 1692f claim where the plaintiff failed to allege "unfair or unconscionable" conduct that was distinct from the conduct supporting his § 1692e claim); *Montgomery v. Cent. Loan Admin. & Reporting*, No. 1:20-cv-316-TFM-C, 2022 WL 479130, at *8 (S.D. Ala. Feb. 16, 2022) ("A claim under § 1692f must independently violate the

section to be actionable."); *Johnson v. Waypoint Res. Grp.*, 596 F. Supp. 3d 1184, 1192 (S.D. Ind. 2022) (collecting cases).

Here, Kirkland alleges ICS violated both § 1692e and § 1692f "by continuing to report the [KinderCare] debt to the credit reporting agencies, when it knew the debt was disputed by [Kirkland], and by failing to report that the debt was disputed." (Doc. 1 ¶¶ 23, 27.) Both claims are thus supported by identical allegations. Because Kirkland's § 1692f claim is based on no other "conduct beyond which [s]he asserts" violates § 1692e, ICS is entitled to summary judgment on the § 1692f claim. *Miljkovic*, 791 F.3d at 1308.

### B. There is a genuine dispute as to whether ICS should have known the KinderCare debt was disputed.

Section 1692e prohibits debt collectors from using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. As relevant here, the statute makes it unlawful for a debt collector to communicate credit information which "is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed." *Id.* § 1692e(8). The issue before the Court here is whether ICS, as a matter of law, knew or should have known that Kirkland disputed the KinderCare account based on the information and language in the Dispute Letters.

Where, as here, liability under the FDCPA turns on the meaning of language that is reasonably susceptible to two interpretations, the ambiguity is "for resolution by the trier of fact, not by the court in a summary judgment context." *Jeter v. Credit Bureau, Inc.*, 760 F.2d 1168, 1176 (11th Cir. 1985) (reversing summary judgment in FDCPA action based on ambiguities in demand letter that created a jury question as to the meaning of the ambiguous language). In this case, Kirkland argues the Dispute Letters "clearly stated" she was disputing "all debts" ICS was collecting, including the KinderCare account. (Doc. 40 at 17.) ICS takes the opposite view and, pointing to language in the letters indicating Kirkland disputed only a single "debt"—which it concluded was the AT&T account—claims there is no evidence it knew or should have known Kirkland disputed the KinderCare account. (Doc. 33 at 15.) This Court disagrees with both parties; the Dispute Letters are ambiguous.

The Dispute Letters reference both "all debts" and a single "debt." One sentence reads, "The purpose of this letter is to provide you with written notice that the above-referenced individual(s) is in fact and in law represented by this office for *all debts* that he or she may have."[6] (Doc. 33-3 at 6 (emphasis added).) A few sentences later, the letters declare that Kirkland "disputes *the debt* which [ICS] is

---

[6] Although the parties do not address this point, the Court notes that this sentence does not explicitly state that Kirkland *disputes* all debts held by ICS, but rather only that Bond & Botes *represents* her for all debts, which could include representation for other purposes such as settlement negotiations.

attempting to collect." (*Id.* (emphasis added).) Nowhere do the letters describe any specific account or debt under dispute. A reasonable jury could conclude from this ambiguity either that Kirkland disputed "all debts" held by ICS or that she disputed only a single "debt." Therefore, a question of material fact exists as to whether ICS knew or should have known the KinderCare account was disputed based on the information in the Dispute Letters. This question precludes summary judgment. *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1197 (11th Cir. 2010) (*per curiam*); *see Johnson*, 596 F. Supp. 3d at 1191 (denying summary judgment on the same grounds in a factually similar case).

## C. Whether ICS was obliged to update its credit reporting is immaterial.

ICS next contends that, even if it should have known Kirkland disputed the KinderCare account, it had no obligation to update its credit reporting to reflect her dispute.[7] (Doc. 33 at 12.) This argument misunderstands Kirkland's allegations—she does not assert ICS had a duty to update its reporting with the credit bureaus. Instead, she claims ICS violated § 1692e when it reported the KinderCare debt *after*

---

[7] ICS cites a recent district court opinion holding that "a debt collector does not have to proactively amend its report after learning the debtor disputes the debt." *Canady v. Kaps & Co.*, No. 4:20-CV-1253-CLM, 2021 WL 3492977, at *4 (N.D. Ala. Aug. 9, 2021). This holding is supported by Federal Trade Commission staff commentary on the FDCPA, which states, "[w]hen a debt collector learns of a dispute after reporting the debt to a credit bureau, the dispute need not also be reported." Staff Commentary on the Fair Debt Collection Practices Act, 53 Fed. Reg. 50097-02, 1988 WL 269068, at *50106 (Dec. 13, 1988); *see Jeter*, 760 F.2d at 1172 (suggesting that guidance from the Federal Trade Commission may be persuasive authority in this circuit).

receiving the Dispute Letters and without marking the debt as disputed. ICS admits it received the Dispute Letters in November 2022, and there is evidence that ICS credit reported the KinderCare debt again on January 1, 2023, without marking the debt as disputed.[8] (Docs. 1-3 at 4; 33-2 at 11.) Assuming ICS knew or should have known Kirkland disputed the KinderCare debt, these facts establish a prima facie § 1692e claim. 15 U.S.C. § 1692e(8); *Canady v. KAPS & CO (USA) LLC*, No. 4:20-CV-1253-CLM, 2021 WL 3492977, at *4 (N.D. Ala. Aug. 9, 2021). Accordingly, ICS's argument is unavailing.

### D. ICS is not entitled to summary judgment on its bona fide error defense.

"The FDCPA typically subjects debt collectors to liability even when violations are not knowing or intentional." *Owen v. I.C. System, Inc.*, 629 F.3d 1263, 1270 (11th Cir. 2011) (citing *LeBlanc*, 601 F.3d at 1190). However, the FDCPA provides an affirmative defense to liability "if the debt collector shows by a

---

[8] A credit profile report from Experian, dated January 3, 2023, indicates that ICS reported the KinderCare account on January 1, 2023, without listing the debt as disputed. (Doc. 1-3 at 4.) ICS argues that this evidence is inadmissible hearsay, and therefore there is no evidence ICS reported the KinderCare account after receiving the Dispute Letters. (Doc. 45 at 2.) But ICS's own records also show an "[u]pdate" to the KinderCare account on January 1, 2023. (Doc. 33-2 at 11.) And "evidence does not have to be authenticated or otherwise presented in an admissible form to be considered at the summary judgment stage, as long as the evidence could ultimately be presented in an admissible form." *Smith v. Marcus & Millichap, Inc.*, 991 F.3d 1145, 1156 n.2 (11th Cir. 2021) (citation and quotations omitted). Kirkland has thus shown "at least circumstantial evidence that [ICS] was reporting information about this debt as late as [January 2023] without disclosing [Kirkland's] dispute." *Whitehead v. Nationwide Recovery Serv., Inc.*, No. 1:18-CV-3670-TCB-JCF, 2019 WL 8277269, at *6 (N.D. Ga. Dec. 2, 2019), *report and recommendation adopted*, No. 1:18-CV-3670-TCB, 2020 WL 1467253 (N.D. Ga. Jan. 8, 2020).

preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error." 15 U.S.C. § 1692k(c). To prevail on the bona fide error defense, ICS "bears a three-part burden of showing that its FDCPA violation (1) was 'not intentional'; (2) was 'a bona fide error'; and (3) occurred despite the maintenance of procedures 'reasonably adapted to avoid any such error.'" *Owen*, 629 F.3d at 1271 (quoting *Edwards v. Niagara Credit Sols., Inc.*, 584 F.3d 1350, 1352–53 (11th Cir. 2009)). This Court concludes that reasonable jurors could disagree over whether ICS's procedures were reasonably adapted to avoid the error at issue here.[9]

To establish the third element of its defense, ICS must show that (1) it "'maintained' … procedures to avoid errors," and (2) "the procedures were 'reasonably adapted' to avoid the specific error at issue." *Id.* at 1274 (quoting *Johnson v. Riddle*, 443 F.3d 723, 729 (10th Cir. 2006)). The Supreme Court has described "procedures" in this context as "processes that have mechanical or other such 'regular orderly' steps to avoid mistakes." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich L.P.A.*, 559 U.S. 573, 587 (2010). There is "no definitive list of

---

[9] For the purpose of this discussion, the Court assumes that ICS violated the FDCPA and that the violation was (1) unintentional and (2) a bona fide error. The Court notes, however, that Kirkland is not entitled to summary judgment on these first two elements of the defense; there is little to no evidence that ICS intentionally violated the FDCPA or that its violation, if any, was made in bad faith. *See Arnold v. Bayview Loan Servicing, LLC*, 659 F. App'x 568 (11th Cir. 2016) (discussing the first two elements of the bona fide error defense).

procedures, or even universally applicable parameters, by which to assess" this two-prong test. *Owen*, 629 F.3d at 1274. Rather, it is a "fact-intensive inquiry" to be determined "on a case-by-case basis." *Id.* Here, there is no dispute that ICS maintains procedures to avoid errors. (*See* doc. 40 at 27.) There is, however, a genuine dispute as to whether ICS's procedures were reasonably adapted to avoid the specific error at issue.

ICS has formal policies governing the receipt and handling of communications from consumers and their attorneys. (Doc. 33-1 ¶ 49.) They include the "Consumer Correspondence Handling Policy," "Consumer Affairs Handling Policy," and the "Dispute Handling Policy." (*Id.*) According to ICS, these policies ensure that employees competently "read and interpret" communications from consumers and, when appropriate, locate and mark any disputed debts as disputed. (*Id.* ¶¶ 49, 50.) ICS enforces these policies periodically through internal audits (*id.* ¶ 54), and its employees allegedly undergo "extensive" and "ongoing" training and supervision. (*Id.* ¶ 53.) Employees who violate ICS's policies allegedly are disciplined. (*Id.* ¶ 54.)

ICS also has specific internal procedures for handling disputes, including generic dispute letters like Kirkland's. (*Id.* ¶ 53.) These procedures require ICS representatives to identify disputed accounts by matching the information contained in a dispute letter to the information ICS has in its system. Specifically,

representatives attempt to identify disputed accounts by matching a debtor's first and last name plus either: (1) date of birth; (2) social security number; or (3) current address. (Doc. 34-3 at 22:10–16.) If ICS is unable to locate a matching account based on the information provided in a dispute letter, it sends a "Can't Find" letter requesting more information so it can identify the disputed account. (Doc. 33-1 ¶ 51.)

In this case, an ICS representative following these procedures identified and marked as disputed the AT&T account by matching Kirkland's name and social security number—which were provided in the Dispute Letters—to the same information provided by AT&T. (Doc. 34-3 at 10:4–9.) ICS did not identify and mark as disputed the KinderCare account using these same procedures because (1) KinderCare did not provide ICS with Kirkland's social security number, (2) the Dispute Letters did not provide Kirkland's date of birth, and (3) the address in the Dispute Letters did not match the addresses ICS had in its system. (*Id.* at 11:3–6, 26:9–13; doc. 33-1 ¶ 45.) Having successfully identified the disputed AT&T account, however, ICS never sent a "Can't Find" letter requesting more information from Kirkland or her attorneys. (Doc. 34-3 at 15:7–13.) Instead, ICS sent a letter informing Kirkland that it had deleted the AT&T account. (Doc. 33-3 at 9.)

ICS contends these facts conclusively establish it has reasonable procedures in place for identifying disputed debts and marking them as disputed, thus entitling

it to the bona fide error defense. Kirkland disagrees. She argues that ICS's current procedures "are especially prone to error when applied to debts without social security or date of birth information, like the one at issue here," and that ICS has "no clear directives on handling letters that dispute multiple debts." (Doc. 40 at 27–28.) Kirkland suggests two procedures that ICS could implement to prevent the error at issue here. First, ICS could require its representatives to seek more information when a dispute letter disputes multiple debts but contains insufficient information to identify more than a single disputed account. Second, when a representative identifies a disputed account, ICS could require the representative to run additional queries using information cross-referenced from that account. For example, had ICS queried its database using addresses contained in the AT&T account, Kirkland explains, it would have identified the KinderCare account because both accounts had the same name and prior addresses listed. (Doc. 34-3 at 26:5–8.) Kirkland's arguments are not without merit.

Nor is ICS's response. As ICS asserts, the FDCPA "does not require debt collectors to take every conceivable precaution to avoid errors; rather, it only requires reasonable precaution." *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 539 (7th Cir. 2005). Thus, the fact that ICS could have done more to prevent the error at issue does not preclude its entitlement to the bona fide error defense. *Id.*

In sum, a question of material fact exists as to the reasonableness of ICS's procedures for investigating dispute letters that dispute multiple debts. Because reasonable minds could disagree, the question is one for the jury. *Greenberg*, 498 F.3d at 1263.

## IV. CONCLUSION

For the reasons stated above, Kirkland's motion for summary judgment (doc. 34) is due to be **DENIED**, and ICS's motion for summary judgment (doc. 33) is due to be **GRANTED IN PART** and **DENIED IN PART**. Summary judgment is due to be **GRANTED** in ICS's favor on Kirkland's § 1692f claim. Summary judgment is due to be **DENIED** as to her § 1692e claim. Kirkland's motion to strike (doc. 39) is due to be **TERMINATED AS MOOT**. The Court will enter an Order consistent with this Opinion.

**DONE** AND **ORDERED** ON JUNE 6, 2024.

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
215647